```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS


SHAN D. WARREN,              )
         Plaintiff           )
                             )
              v.             )  C.A. No. 10-cv-30053-MAP
                             )
MICHAEL J. ASTRUE,           )
COMMISSIONER, SOCIAL         )
SECURITY ADMINISTRATION,     )
         Defendant           )
```

             **MEMORANDUM AND ORDER REGARDING**
      **PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND**
      **DEFENDANT'S MOTION TO AFFIRM DECISION OF COMMISSIONER**
                       (Dkt. Nos. 9 & 11)

                        January 4, 2011

PONSOR, D.J.

                       I. INTRODUCTION

   This action seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff applied for DIB and SSI on March 5, 2008, alleging disability since January 1, 2000, due to nerve damage in his right hand, fibromyalgia, chronic right-arm pain, level-three separation of the right shoulder, and snapped tendons

in his right hand. He also alleged disability due to depression and anxiety. On August 6, 2008, the Commissioner advised Plaintiff that his claim was denied. Plaintiff's request for reconsideration was also denied. Plaintiff then requested a hearing with an Administrative Law Judge ("ALJ"), which was held on August 14, 2009. The ALJ issued a decision several weeks later denying Plaintiff's claim, which the Decision Review Board affirmed on January 12, 2010.[1] Plaintiff then filed this complaint.

Plaintiff now moves for judgment on the pleadings (Dkt. No. 9), and Defendant moves for an order affirming the decision of the Commissioner (Dkt. No. 11).

## II. FACTS

A. Plaintiff's Medical History.

Plaintiff was twenty-one years old at the time of the alleged onset of disability and thirty-one years old when the ALJ rendered her decision. (A.R. 4, 24-25.) Plaintiff

---

[1] Plaintiff states that the Decision Review Board affirmed the decision, while Defendant suggests that the Review Board simply failed to render a decision within the allotted time. This dispute is not material, however, because both parties agree that the ALJ's decision is now binding and subject to judicial review.

has a general equivalency diploma ("GED"), and worked previously as a stock selector, furniture mover, waiter, and personal care attendant. (A.R. 67, 166.)

    1.  <u>Mental / Emotional Ailments</u>.

From 2000 through 2009, Plaintiff was treated for depression and anxiety at various intervals by his psychologist, Dr. Imad Khreim. In April 2005, Dr. Khreim diagnosed Plaintiff with major depressive disorder and anxiety disorder not otherwise specified, and assigned a Global Assessment of Functioning ("GAF") score of 60.[2] (A.R. 455.) By December 2005, Dr. Khreim reported that Plaintiff was "doing well" on a regimen of Celexa and Klonopin with no side effects, and that his interest, energy, and motivation were at baseline. (A.R. 231, 435-

---

[2] The Global Assessment of Functioning ("GAF") Scale is used for reporting a clinician's judgment of the individual's overall level of functioning and concerns psychological, social and occupational functioning and, unless otherwise noted, refers to the level of functioning at the time of evaluation. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32-33 (4th ed., text revision 2000) (hereinafter "DSM IV"). GAF scores in the 51-60 range indicate "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV 34.

43.) Plaintiff continued to seek treatment from Dr. Khreim with varying frequency through June 2009. Throughout this period, Dr. Khreim consistently described Plaintiff as exhibiting a normal attention span, intact memory, fair insight and judgment, and no mood swings or suicidal ideation. (A.R. 410, 415, 421-33, 678, 1064-65, 1070.)

From February 2003 through March 2009, Plaintiff also underwent regular counseling with Jeffrey Livingston, a licensed independent clinical social worker. (A.R. 510, 1092.) Mr. Livingston's notes from the initial counseling session indicate that Plaintiff exhibited symptoms of sleep disturbance, irritability, low self-esteem, reduced concentration, anhedonia (the inability to experience pleasure), and passive suicidal ideation. (A.R. 510.) In February 2009, Mr. Livingston completed a mental impairment questionnaire, in which he diagnosed recurrent moderate major depressive disorder, anxiety disorder not otherwise specified, and post-traumatic stress disorder ("PTSD"), and assigned a GAF score of 50.[3] (A.R. 1073-76.) Mr.

---

[3] GAF scores in the 41-50 range reflect "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in

4

Livingston opined that Plaintiff had "marked" functional limitations in activities of daily living, social functioning, and in maintaining concentration, persistence, or pace. (A.R. 1074.) He also reported that Plaintiff had experienced three episodes of decompensation (intense stress), each lasting at least two weeks, within a twelve-month period. (A.R. 1074.) Mr. Livingston further opined that Plaintiff's impairments would cause him to be absent from work more than four days per month. (A.R. 1076.)

2. <u>Physical Ailments</u>.

Between 2006 and 2009, Plaintiff was treated for pain in his neck, right hand, and right shoulder, as well as for symptoms of fibromyalgia, by multiple physicians including Doctors Alan Bullock, Peter Schur, Kameel Garas, John Ferriss, and Stjepan Kereshi. Plaintiff maintains that these visits were the result of a snapped tendon in his right hand as well as a dirt-bike accident in November 2006, which required him to undergo shoulder surgery. (A.R. 717, 770). Defendant suggests, however, that these visits were

---

social, occupational or school functioning (e.g., no friends, unable to keep a job)." DSM-IV 34.

thinly veiled attempts to support Plaintiff's addiction to painkillers, as evidenced by several reports from Plaintiff's treating physicians.[4]

In May 2009, Plaintiff underwent a cervical MRI, which revealed a small left C4-5 and C5-6 disc protrusion (A.R. 1104.) The reviewing doctor characterized the findings as "truly just minor bumps or bulges." (A.R. 1104.)

B. <u>State Agency Assessments</u>.

In December 2008, Ginette Langer, Ph.D., a state agency psychologist, reviewed Plaintiff's medical records and

---

[4] Plaintiff's psychologist, Dr. Khreim, suspected that Plaintiff was abusing his medications and identified "several red flags that have been alarming to us, including running out of his medication, misplacing them, the medication [was] destroyed in a car accident, somebody stole my medicine, etc." (A.R. 427.) Medical records show that Plaintiff presented himself to Dr. Bullock, multiple emergency rooms, and other doctors on numerous occasions, seeking additional pain medication for a variety of shoulder and neck injuries. Specifically, Plaintiff reported that he required medication for injuries to his shoulder and/or neck sustained during a mugging; during a car-jacking; while performing maintenance on a car; while sledding; after walking into a wall in his home; after falling on hospital stairs; and after being hit in the head with a cinder-block. (A.R. 762, 766-67, 924, 947, 953, 961, 988, 993). Other doctors also noted that Plaintiff exhibited "drug seeking behavior," and his primary care physician ultimately discharged him from his practice in April 2008 for "incessantly" calling and "harass[ing]" his staff for painkillers. (A.R. 321, 816, 823, 963, 971, 988.)

completed a mental residual functional capacity ("RFC") assessment. (A.R. 629-645.) Dr. Langer concluded that Plaintiff could concentrate and maintain attention for at least two hours at a time, act socially appropriate, and adapt to routine changes in the work setting. (A.R. 645.)

In January 2009, Romany Hakeem Girgis, M.D., a state agency physician, reviewed Plaintiff's medical records and completed a physical RFC assessment. (A.R. 658-665.) Dr. Girgis opined that Plaintiff retained the capacity to lift and/or carry ten pounds frequently and twenty pounds occasionally; stand and/or walk for a total of at least two hours in an eight-hour workday; sit for a total of about six hours in an eight-hour workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl. (A.R. 659.) Dr. Girgis also concluded that Plaintiff was limited in his ability to push and/or pull with his upper right extremity, which he could use only occasionally for reaching and handling. (A.R. 661.)

C. <u>Vocational Expert Testimony</u>.

The ALJ asked a vocational expert to opine on the job prospects of a hypothetical claimant of the same age,

educational background, and work experience as Plaintiff, and who was restricted to sedentary work with the following limitations:

> standing and walking, either one of them, at a maximum of two hours a day cumulative; sitting, about six hours a day; a limit of pushing and pulling to less than 10 pounds due to his right-hand and right-shoulder motion limitations; no limits to the lower extremity; occasional climbing . . . occasional overhead, and when I say overhead, I'm going to limit, limit it to just his shoulder height, nothing up reaching . . . as far as limiting again in the hand dextrous situation, we're going to talk about occasional manipulation, handling, and fingering, due to his right, to the extent that his right hand can be used for guiding, support, and so forth, because he is right-hand dominant.

(A.R. 70.) The ALJ further limited the individual to unskilled work requiring only occasional interaction with supervisors, coworkers, and the public, and which would allow him to make postural adjustments and avoid machinery and extreme temperatures. (A.R. 71-73.) The vocational expert testified that the individual could work as a surveillance-system monitor (1,300 positions in Massachusetts), or a polisher of jewelry and eye glass frames (1,000 positions), as those jobs are defined in the Dictionary of Occupational Titles ("DOT"). (A.R. 71-73.)

8

The vocational expert also testified that there would be no jobs available if the hypothetical claimant also required hourly five-minute work breaks. (A.R. 73.) Upon inquiry from Plaintiff's attorney, the vocational expert acknowledged that the hypothetical claimant would be precluded from all work if he was to be absent from work more than four days per month. (A.R. 74.)

D.  <u>The ALJ's Findings</u>.

The ALJ found that Plaintiff had the following severe impairments: right hand nerve damage with chronic pain, bilateral shoulder pain, depression, and anxiety.[5] (A.R. 10.) Despite Plaintiff's impairments, the ALJ found that Plaintiff had the RFC to perform:

> sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.927(a) except he is limited to standing and walking up to 2 hours maximum in an 8 hour day; he can sit up to 6 hours in an 8 hour day; limited in push/pulling to more than 10 pounds with his right hand because of right hand and right shoulder limitations; no lower extremity limitations regarding foot controls; due to right hand and right shoulder impairments and pain, the

---

[5] In rendering her decision, the ALJ applied the regulatory sequential evaluation process for evaluating DIB and SSI claims. (A.R. 8-19). See <u>Barnhart v. Thomas</u>, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

9

> claimant is limited to occasionally climbing, reaching, ladders, overhead reaching (only with left hand), handling, balancing, stopping[,] fingering, crouching and crawling; Must avoid concentrated exposure to heavy machinery, extreme cold, heat and humidity; and limited to occasional interaction with general public.

(A.R. 11.) After considering Plaintiff's age, education, lack of work experience, and RFC, in conjunction with the testimony of the vocational expert, the ALJ determined that "he is able to perform all activities of daily living; he is able to engage in a variety of social activities as well as vocationally related exertional and non-exertional activities." (A.R. 17.) Accordingly, the ALJ found that Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (A.R. 19.)

### III. DISCUSSION

#### A. Standard of Review.

Judicial review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner applied the correct legal standards. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The responsibility for

weighing conflicting evidence and resolving issues of credibility belongs to the Commissioner and his designee, the administrative law judge. See id. at 10. The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is such evidence "as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Accordingly, the court must affirm the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d at 218, 222 (1st Cir. 1981). This is true "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

B. **The Commissioner's Alleged Errors.**

    1. **Weight of Mr. Livingston's Opinion.**

Plaintiff argues that the ALJ erred by failing to give appropriate weight to the opinion of Plaintiff's therapist and social worker Mr. Jeffrey Livingston. As noted, Mr.

Livingston served as Plaintiff's treating therapist for six years. Plaintiff states that Mr. Livingston provided a more helpful view of Plaintiff's situation because he gave Plaintiff a GAF score of 50, while Dr. Khreim gave Plaintiff a score of 60. Additionally, Mr. Livingston opined that Plaintiff would miss more than four days of employment each month, thus eliminating most employment prospects. The ALJ, however, expressly gave "the least weight" to Mr. Livingston's opinion. Plaintiff claims that this was an error.

In her decision, the ALJ listed four reasons for attributing less weight to Mr. Livingston's opinion: (1) Mr. Livingston "is not an acceptable treating source since he is a Licensed Social Worker;" (2) Mr. Livingston "simply checkmarked boxes indicating the claimant had a 'marked' limitation in the Part B criteria, but he did not explain why he chose 'marked' as a finding, in particular, he gave no examples of objective laboratory findings, symptoms or other medical evidence to support his conclusion;" (3) Mr. Livingston "stated that the claimant had three episodes of decompensation in the past year, but he did not document

when and their duration;" and (4) Mr. Livingston's findings of mental limitations are "inconsistent with the record of his treatment notes, his findings that the claimant has a Global Assessment Functioning of 50 and other evidence in the record." (A.R. 17.) In response, Plaintiff cites <u>Castro v. Barnhart</u>, 198 F. Supp. 2d 47, 54 (D. Mass. 2002), which states that a judge may "reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record." Plaintiff reasons that the ALJ erred by rejecting Mr. Livington's opinion when, according to Plaintiff, that opinion was consistent with substantial evidence in the record.

Plaintiff's argument ignores a key fact highlighted by the ALJ: Mr. Livingston is a licensed social worker, not a treating physician. "Only 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight." SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). The regulations provide an exhaustive list of "acceptable medical sources," which includes: licensed physicians, licensed or certified

psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. §§ 404.1513(a), 416.913(a). Medical sources who are not "acceptable medical sources" are considered to be "other sources" and include, <u>inter alia</u>, licensed clinical social workers. <u>See</u> SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006); <u>see generally</u> 20 C.F.R. §§ 404.1513(d), 416.913(d) (stating that "other sources" include nurse practitioners, physician's assistants, naturopaths, chiropractors, audiologists, and therapists). Accordingly, the ALJ did not err by refusing to afford controlling weight to Mr. Livingston's opinion.

In addition, Plaintiff fails to address the remaining three arguments presented by the ALJ -- all cogent reasons for discrediting Mr. Livingston's opinion. Thus, Plaintiff has not shown that the Commissioner, in affirming the ALJ's decision, applied an incorrect legal standard or reached a conclusion without substantial evidentiary support.[6] <u>See</u>

---

[6] At oral argument Plaintiff's counsel also noted that Plaintiff met with Mr. Livingston much more frequently than with his treating physicians, thus making Mr. Livingston a more reliable source. This argument, though meriting consideration, is unpersuasive in light of the sundry

Seavey, 276 F.3d at 9.

C. The Alleged Inconsistency Between the ALJ's Conclusion and the Hypotheticals Posed.

Plaintiff further argues that the ALJ erred by reaching a conclusion that differed from the hypothetical posed to the vocational expert during the hearing. The ALJ found that Plaintiff had the RFC to perform "sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.927(a) except he is limited to standing and walking up to 2 hours maximum in an 8 hour day; he can sit up to 6 hours in an 8 hour day; limited in push/pulling to more than 10 pounds with his right hand . . ." (A.R. 11.) Plaintiff notes that this language is inconsistent with the hypothetical posed to the vocational expert, which discussed an individual with "a limit of pushing and pulling to less than 10 pounds." (A.R. 70.) Thus, Plaintiff reasons, the ALJ's conclusion rested on a false hypothetical and cannot be relied upon.

Defendant correctly notes that this appears to be nothing more than a typographical error. It is nonsensical to "limit" a person to pushing and pulling _more_ than ten

---

reasons noted by the ALJ for affording less weight to Mr. Livingston's testimony.

15

pounds of weight.  In any event, the hypothetical posed to the vocational expert was more restrictive and, thus, more favorable to Plaintiff.

Given that substantial evidence supports Defendant's decision and given that Defendant applied the correct legal standards, Plaintiff's motion will be denied and Defendant's motion will be allowed.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 9) is hereby DENIED, and Defendant's Motion to Affirm the Decision of the Commissioner (Dkt. No. 11) is hereby ALLOWED.  The clerk will enter judgment for Defendant.  The case may now be closed.

It is So Ordered.

                                        /s/ Michael A. Ponsor
                                        MICHAEL A. PONSOR
                                        U. S. District Judge